IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CRIM. No. 08-012-E-BLW |
| Plaintiff, | ) | |
| | ) | MEMORANDUM DECISION |
| v. | ) | AND ORDER |
| | ) | |
| HARRY JESS BURKE, | ) | |
| | ) | |
| Defendant. | ) | |

## INTRODUCTION

The Court has before it (1) a motion to dismiss Count One, (2) a motion to dismiss all counts, and (3) motions to suppress evidence pertaining to Counts Two through Four. The Court held an evidentiary hearing on September 22, 2008, denied the motion to suppress regarding Count Four, and took the other motions under advisement. The Court's ruling on the motions is set forth below.

**1.    Motion to Suppress Regarding Counts Two and Three**

In this motion, defendant seeks to suppress the gun – and his admission regarding the gun's location – that forms the basis for the felon-in-possession charge in Count Three and the drugs that form the basis for the possession charge

in Count Two. The motion requires an examination of the events surrounding the search of a vehicle driven by defendant that led to the discovery of these items.

On September 14, 2006, police officers with the Bonneville County Sheriff's Office were seeking to serve a felony arrest warrant on Curtis Hartshorn. An acquaintance of Hartshorn's, Stephanie Wilmot, told police that Hartshorn may be found at 187 4th St. in Idaho Falls. While Stephanie denies providing this information, the Court finds credible the officers' accounts that she did provide this information, especially since there was no other reason for the officers to proceed to that address as they did.

Officers Moulton and Poulter arrived at that address about 7:30 p.m. on September 14, 2006. Neither officer knew Hartshorn or had a photograph of him. The building contained apartments on a second story, with parking spaces on the ground floor directly beneath the apartments.

The officers saw two persons – the defendant and Tamara Wiscombe – get into a vehicle parked in the space corresponding to the apartment that was the officers' destination. Suspecting that Hartshorn might be in the vehicle, and seeing it prepare to leave, the officers flanked it, with Officer Poulton at the passenger's side window and Officer Moulton at the driver's side window. Within seconds, both officers observed that the occupants exhibited signs of being under the influence of controlled substances. As the officers asked for identification, both

occupants fumbled to comply.

The defendant was in the driver's seat. He gave his identification to Officer Moulton, showing that he was not Hartshorn.

At the very same time, Officer Poulter saw that the passenger – a female – had on her lap an open purse, in which he could see a clear bag of what he believed to be methamphetamine. He informed Officer Moulton and both officers ordered the occupants out of the vehicle in preparation for arresting Wiscombe.

Because he believed the defendant was under the influence of drugs, and was making furtive movements, Officer Moulton began to handcuff the defendant. As he did so, the officers observed that the defendant was wearing a gun holster on his hip. As the defendant was restrained in a standing position with handcuffs applied, the officers demanded to know where the gun was. After three or four such demands, the defendant told the officers that the gun was under the back seat. There, the officers found the Glock handgun that forms the basis for the felon-in-possession charge in Count Three. The officers also found an unlocked briefcase in the trunk of the vehicle containing methamphetamine that forms the basis for Count Two.

The threshold issue is whether the initial stop of the vehicle was proper. "If police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a

completed felony, then a Terry stop may be made to investigate that suspicion." *United States v. Hensley*, 469 U.S. 221, 229 (1985). The Court must engage in a balancing test to weigh "the nature and quality of the intrusion on personal security against the importance of the governmental interests alleged to justify the intrusion." *Id.* at 225.

In this case, the officers were looking for Curtis Hartshorn, who was wanted in connection with a felony. They proceeded to 187 4th St. on the basis of Wilmot's tip that Hartshorn might be found there. When they arrived, they saw two persons in a vehicle preparing to leave from a parking space associated with that address. At this point, the officers had a reasonable suspicion, grounded in specific and articulable facts, that the vehicle might contain Hartshorn. By simply asking for the occupants' identification, the officers limited their intrusion to that necessary to achieve their goal of locating Hartshorn. Under the balancing test, the officers had a right to make this limited *Terry* stop of the vehicle.

Regardless, defendant argues, the officers had no right to ask Wiscombe for her identification because she was obviously not Hartshorn. Defendant asserts that everything else that happened that night was the result of Officer Poulter's demand for Wiscombe's identification, because her fumbling reply led to (1) the discovery of the methamphetamine, (2) the discovery of defendant's holster, (3) the questioning of defendant, and (4) defendant's admission about the location of the

gun.

The defendant, however, has no standing to complain about the violation of Wiscombe's rights.  *See United States v. Talley,* 275 F.3d 560 (6th Cir. 2001) (holding that defendant had no standing to complain about illegal search of another that led to defendant's admission about location of gun).  Thus, the validity of the arrest of Wiscombe for methamphetamine possession cannot be challenged by the defendant in this proceeding.[1]

Having arrested Wiscombe, the officers had the right to conduct a warrantless search of the vehicle.  *New York v. Belton*, 453 U.S. 454 (1981).  The officers had this right despite the fact that defendant was handcuffed.  *See Thornton v. United States*, 541 U.S. 615, 618 (2004) (finding *Belton* controlling where arrestee was handcuffed and placed in patrol car before officer searched arrestee's vehicle).  However, a search incident to a lawful arrest must be confined to the area under the suspect's immediate control when he was arrested and events between the time of the arrest and search must not render the search unreasonable.  *United States v. Nohara,* 3 F.3d 1239, 1243 (9th Cir.1993).

Thus, the officers had the right to search under the seats, where the gun was

---

[1] The Court finds it unnecessary to address the Government's argument that the officers, upon making observations which led them to believe that both Burke and Wiscombe had been using methamphetamine, was entitled, under *Terry*, to stop them from leaving the parking lot both to investigate a felony involving the possession and use of methamphetamine and to prevent Burke from operating a motor vehicle under the influence of a controlled substance.

located. Because the officers would have found the gun pursuant to a lawful search incident to arrest, even without defendant's identification of its location, the inevitable discovery doctrine applies, and the gun itself is not excluded even if defendant's identification of its location is an excludable admission. *See United States v. Andrade,* 784 F.2d 1431, 1433 (9th Cir.1986) (holding that under inevitable discovery doctrine, suppression of evidence is not required if the contraband or other material seized would have been discovered inevitably by lawful means). While the officers could not search the trunk in a search incident to arrest, they could do so during a valid inventory search and hence the same doctrine applies to protect from exclusion the contents of the briefcase found in the vehicle's trunk.

Even if the inevitable discovery doctrine does not apply, the search of the trunk was valid. By the time of the trunk search, the officers had probable cause to believe the vehicle might contain methamphetamine after finding it in Wiscombe's pursue. Police officers who have stopped an automobile legitimately and who have probable cause to believe that contraband is concealed somewhere within it may conduct a warrantless search of the vehicle. See *United States v. Ross*, 456 U.S. 798, 807 n. 9 (1982); see also *Wyoming v. Houghton*, 526 U.S. 295 (1999) (holding that "automobile exception" to Fourth Amendment's warrant requirement permits a search of any container in vehicle that might contain object of search,

regardless of whether container belongs to driver or passenger). The officers had probable cause to search the trunk for methamphetamine, and their search of the unlocked briefcase found in the trunk is therefore valid.

Turning next to defendant's statement about the location of the gun, the Court finds it valid under *United States v. Quarles*, 467 U.S. 649, 655-56 (1984). That case established a public safety exception to excuse the omission of *Miranda* warnings designed to protect Fifth Amendment rights.

Here, the presence of an empty holster on defendant's hip indicated a gun was nearby. To protect the safety of themselves and the public, the officers were entitled to immediately ask about the gun's location without the delay inherent in giving *Miranda* rights. After listening to the tape of the encounter, the Court cannot find that the officers' demands for the gun's location were so onerous that they overcame defendant's will to resist. *See Beckwith v. United States*, 425 U.S. 341, 347-348 (1976).

Defendant argued in his briefing that he only divulged the gun's location with "Officer Poulter kneeling on [defendant's] back, grinding [defendant's] face into the ground." *See Defense Brief* at p. 14. The evidence at the suppression hearing – particularly the tape recording of the encounter – gives no indication that defendant was involved in any kind of a scuffle when he identified the gun's location. The Court finds credible the officers' testimony that defendant made this

admission while standing and without physical coercion.

For all these reasons, the Court will deny defendant's motion to suppress regarding Counts Two and Three.

## 2. Motion to Suppress Regarding Count Four

The Court heard testimony regarding this motion and denied it from the bench. The Court's ruling from the bench will stand as the decision of the Court on this motion.

## 3. Motion to Dismiss Count One

Defendant challenges the sufficiency of the evidence on the conspiracy alleged in Count One. However, there is no summary judgment proceeding in a criminal case. *See United States v. Blanton*, 476 F.3d 767 (9th Cir. 2007). The defendant is entitled to challenge the sufficiency of the evidence in a Rule 29 motion made at the close of the Government's case. The Court will accordingly deny this motion to dismiss without prejudice to defendant's right to make a Rule 29 motion at the appropriate time.

## 4. Motion to Dismiss All Counts – Speedy Trial

Defendant alleges his rights under the Speedy Trial Act were violated. Defendant's first appearance was at the arraignment on January 28, 2008. After 46 days had run on the Speedy Trial clock, defendant filed a motion to continue on March 14, 2008, that was granted by Order (docket no. 18), finding excludable

time from the date of the filing of the motion to the new trial date, July 8, 2008.

Before the date of that trial, defendant filed a second motion to continue on June 29, 2008. That motion was granted, and a new trial date of August 5, 2008, was set. The time between the filing of the second motion for continuance and the new trial date was found to be excludable time.

Before the date of that trial, defendant filed a third motion to continue on July 24, 2008. That motion was granted, and a new trial date of September 8, 2008, was set. The time between the filing of the third motion for continuance and the new trial date was found to be excludable time.

Before that trial date, on August 27, 2008, defendant filed motions to suppress and motions to dismiss. Because these motions must be decided before trial, the period of delay between their filing and resolution – if reasonable – constitutes excludable time. under 18 U.S.C. § 3161(h)(1)(F). *See United States v. Clymer*, 25 F.3d 824, 830 (9th Cir. 1994)("[Section] 3161(h)(1)(F) applies only when the delay in bringing the case to trial is the result of the pendency of a pretrial motion."). Those motions were argued and resolved at a hearing set for September 22, 2008, and thus the period of delay caused by the defendant's filing of these motions, and the Court's consideration of them, is reasonable.

To this date, only 46 days have run off the Speedy Trial clock, well-within the 70-day limit prescribed by the Act. With this ruling, only 12 more days would

tick off before the trial date, now set for October 6, 2008. Thus, as of trial, only 58 days would have run off the Speedy Trial clock. Under these circumstances, the Court can find no Speedy Trial Act violation here.

The defendant alleges that his three motions for continuance were all based on the failure of the Government to provide him with the discovery he requested, and thus should not result in a finding of excludable time. However, the record shows that defendant was given an opportunity to argue his motion to compel that sought this discovery from the Government, but elected instead to reach an agreement with the Government and withdraw his motion. *See Minute Entry (docket no. 36).* Defendant then filed his third motion to continue the trial the very next day. The Court therefore declines to adopt defendant's argument that the Government's failures to provide him with discovery forced him to seek trial continuances.

## 5.  Motion to Dismiss All Counts – Vindictive Prosecution

The defendant has not specifically filed a motion alleging vindictive prosecution. However, the motions he did file could be construed as such a motion and so the Court will address the issue directly.

The Court must first determine whether the Government's "course of conduct appears motivated by a desire to punish the defendant for exercising a legal right." *U.S. v. Jenkins*, 504 F.3d 694, 699 (9th Cir. 2007). If so, the Court

must then decide whether the Government "has come forth with sufficient evidence to dispel any appearance of vindictiveness." *Id.*

The lack of direct evidence is not fatal to defendants' motion; the defendants are "entitled to a presumption of vindictiveness if [they] can show that the . . . charges were filed because [they] exercised a statutory, procedural, or constitutional right in circumstances that give rise to an appearance of vindictiveness." *Id.* "The appearance of vindictiveness results only where, as a practical matter, there is a realistic or reasonable likelihood of prosecutorial conduct that would not have occurred but for hostility or a punitive animus towards the defendant because he has exercised his specific legal rights." *Id.* (quoting *United States v. Gallegos-Curiel,* 681 F.2d 1164, 1168 (9th Cir.1982)).

The defendant argues that his charges were moved from state court – where they were originally filed – to federal court after he filed motions to suppress in the state court action. The problem with this argument is that the indictment here was filed only after the defendant's state court motions had been denied in the state court. Moreover, the defendant does not explain why his motions to suppress in state court would compel prosecutors to seek a federal indictment. He makes no claim that he was entitled to more constitutional protection in state court than he is entitled to here. Accordingly, if he had grounds to suppress a search in the Idaho courts, it would appear that he could assert those same grounds in this federal

court.

The defendant claims that the officer who arrested him committed perjury, and that "the Government knew, or should know," of the perjury. *See Defendant's Brief* at p. 9. The defendant provides no details, however, that would support this charges, offering only to submit a brief "if necessary." *Id*.

The defendant has failed to establish a *prima facie* case for vindictive prosecution. To the degree the defendant's motions can be construed as motions to dismiss for vindictive prosecution, they will be denied.

### 6. **Motion to Dismiss All Counts – Brady Violation**

Defendant asserts that the Government has committed a *Brady* violation but fails to allege what inculpatory documents were withheld. This ground for dismissal is rejected.

### 7. **Motion to Dismiss All Counts – Double Jeopardy**

Defendant claims that the indictment places him in jeopardy twice for the same offense because he was earlier tried in state court. He concedes that the state court action "never made it to trial, having been dismissed without prejudice on the ex parte motion of the prosecution." *Id*. at p. 11. Because the state court action never proceeded to the point where a jury was empaneled and sword, jeopardy never attached. *See Crist v. Bretz*, 437 U.S. 28, 35 (1978). The Court will therefore decline to dismiss this matter on double jeopardy grounds.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the first motion to dismiss (docket no. 35); first motion to suppress evidence in count four and dismiss count four (docket no. 45); first motion to suppress evidence in count three and dismiss count three (docket no. 46); first motion to suppress evidence in count two and dismiss count two (docket no. 47); first motion to dismiss count one (docket no. 48) are DENIED.

DATED: **September 24, 2008**

Honorable B. Lynn Winmill
Chief U. S. District Judge